UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELFINA MOTA; PAUL IHEANACHOR; SORRINA SALAZAR,<br><br>Plaintiffs,<br><br>v.<br><br>TRI-CITY HEALTHCARE DISTRICT dba TRI-CITY MEDICAL CENTER; UNITED STATES OF AMERICA; DAVID SEIF, M.D.; ANESTHESIA SERVICES MEDICAL GROUP, INC. and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No.: 19-CV-1212-AJB-NLS<br>Related Case: 18-CV-2775-AJB-NLS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**(Doc. Nos. 3, 20)** |

Pending before the Court is (1) Defendant United States of America's ("United States") motion to dismiss for failure to state a claim, and (2) Defendants David Seif, M.D. ("Dr. Seif"), and Anesthesia Service Medical Group's ("ASMG") (Dr. Seif and ASMG collectively "ASMG Defendants") motion to dismiss for failure to state a claim. (Doc. Nos. 3, 20.) Plaintiffs Delfina Mota ("Ms. Mota"), Paul Iheanachor ("Mr. Iheanachor"), and Sorrina Salazar ("Ms. Salazar") (Ms. Mota, Mr. Iheanachor, and Ms. Salazar collectively "Plaintiffs") filed oppositions to both motions to dismiss. (Doc. Nos. 11-13, 23-25.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for

1

determination on the papers and without oral argument. For the reasons set forth more fully below, the Court **GRANTS** both the United States' and ASMG Defendants' motions to dismiss.

## I. BACKGROUND

The following facts are taken from Plaintiffs' First Amended Complaint ("FAC") and are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Plaintiffs bring three causes of action, under California state law, for medical malpractice, negligent infliction of emotional distress ("NIED"), and medical battery. At the heart of Defendants' motions to dismiss are the claims for NIED and medical battery. Plaintiffs allege Defendants negligently managed Ms. Mota's labor and delivery, such that there was an emergency C-Section without the benefit of anesthesia. (Doc. No. 1 ¶ 19.)

Plaintiffs allege that on November 15, 2017, at approximately 11:51 am, Ms. Mota presented to co-defendant TRI-CITY HEALTHCARE DISTRICT dba TRI-CITY MEDICAL CENTER ("Tri-City"), and she was admitted for induction of labor. (*Id.* ¶ 16–17.) Dr. Sandra Lopez, M.D. ("Dr. Lopez") was the attending physician. (*Id.* ¶ 4.) Mr. Iheanachor (Ms. Mota's fiancé, life partner, and father of the unborn child) and Ms. Salazar (Ms. Mota's sister) accompanied Ms. Mota to Tri-City. (*Id.* ¶ 38–39). Mr. Iheanachor and Ms. Salazar remained at Ms. Mota's side. (*Id.* ¶ 40). At approximately 11:06 pm, ASMG Defendants administered an epidural. (*Id.* ¶ 18.) When the fetal heartbeat became unable to be read, Dr. Lopez was notified, and she called for an emergency C-Section. (*Id.*) Ms. Mota consented to a vaginal delivery and the use of anesthesia, but she did not consent to a C-Section. (*Id.* ¶ 52). At or about the same time Dr. Lopez called for the C-Section, pages for ASMG Defendants to respond to the operating room were sent over the hospital paging system. (*Id.* ¶ 18, 23.)

When Ms. Mota was rushed to the operating room, Mr. Iheanachor and Ms. Salazar requested to go in the operating room with her. (*Id.* ¶ 41–42.) However, both Mr. Iheanachor and Ms. Salazar were told they could not enter the room. (*Id.*) Mr. Iheanachor

and Ms. Salazar waited just outside the operating room door and in the waiting area respectively. (*Id*.) At this time, Mr. Iheanachor and Ms. Salazar heard multiple pages for ASMG Defendants to respond to the operating room; however, they did not see anyone respond to the pages. (*Id*.)

In the operating room, Dr. Lopez allegedly lost her sense of professionalism and control. Dr. Lopez began screaming, pounding on the table, and yelling for Lidocaine. (*Id.* ¶ 20–21, 25.) Ms. Mota's epidural, administered six hours earlier, had the effect of numbing Ms. Mota from the waist down for the planned vaginal birth; however, it had no effect on the surgical site for the C-Section located on Ms. Mota's lower abdomen. (*Id.* ¶ 23–24.) During this time, Mr. Iheanachor and Ms. Salazar could hear the yelling, banging, and chaos within the operating room. (Doc. No. 1 ¶ 43.)

Dr. Lopez instructed personnel to strap Ms. Mota down, and Ms. Mota's four extremities were strapped to the operating table. (*Id.* ¶ 25.) Dr. Lopez then performed the C-Section without administering sufficient anesthesia. (*Id.* ¶ 54.) No one informed or got the consent of Ms. Mota. (*Id.* ¶ 52, 56.) Ms. Mota was conscious and awake, and she felt everything being done. (*Id.* ¶ 55.) Mr. Iheanachor and Ms. Salazar heard Ms. Mota screaming for help and for Defendants to stop cutting and hurting her. (*Id.* ¶ 44–45.) Additionally, Mr. Iheanachor and Ms. Salazar heard the pages for ASMG Defendants and the lack of response. (*Id*.) Mr. Iheanachor attempted to gain entry into the operating room, but medical staff held him back. (*Id.* ¶ 44.)

After some time, Mr. Iheanachor and Ms. Salazar noticed Dr. Seif running full speed down the hallway and entering the operating room. They also noticed sleep lines on Dr. Seif's face. (*Id.* ¶ 44–45.) Mr. Iheanachor and Ms. Salazar heard the ongoing chaos, and they were concerned for both Ms. Mota and the unborn child. (*Id.* ¶ 46.)

## II. PROCEDURAL HISTORY

Plaintiffs originated this action on or about July 18, 2018, as Case No. 37-2018-00034758-CU-MM-NC in the Superior Court of California, County of San Diego, North County Division. Plaintiffs originally named as defendant Dr. Lopez, an employee of Vista

3

Community Clinic ("VCC"). Plaintiffs later named VCC as a defendant in their FAC filed September 10, 2018. The FAC alleges medical negligence against Dr. Lopez, VCC, Tri-City, Dr. Seif, ASMG, and Does 1 through 30.

On November 20, 2018, the United States Attorney for the Southern District of California certified, pursuant to 42 U.S.C. § 233(c), that Dr. Lopez and VCC were acting within the scope of their employment with respect to the events. Upon the certification, and pursuant to 42 U.S.C. § 233(c), the claims against Dr. Lopez and VCC were deemed tort actions against the United States. On December 10, 2018, the action was removed to this Court and assigned case number 18-cv-2775-AJB-NLS. The United States substituted Dr. Lopez and VCC, who were dismissed with prejudice on December 14, 2018.

On February 5, 2019, the United States filed a Motion to Dismiss because Plaintiffs failed to exhaust their administrative remedies, and the Court lacked subject matter jurisdiction. The Court granted the motion and remanded back to state court.

Plaintiffs filed their FAC in state court. The United States then removed Plaintiff's action to this Court on June 28, 2019. Additionally, the United States filed a Notice of Related Case, and pursuant to the "Low-Number" Rule, the action was transferred to this Court.

### III. REQUESTS FOR JUDICIAL NOTICE

ASMG Defendants and Plaintiffs both requests judicial notice of several documents filed in this Court, and California state court. These documents include complaints filed in California state court regarding this instant matter, and an order issued by this Court in Related Case No. 18-cv-2775-AJB-NLS. (Doc. Nos. 3-3, 11-4.) Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take

4

judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Under Rule 201, judicial notice of the documents filed in this Court and state court is appropriate. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *See NuCal Food, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Based on this authority, the Court **GRANTS** both ASMG Defendants' and Plaintiffs' requests to the extent they seek judicial notice of the existence of the documents.

### IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, a reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief." *Iqbal*, 556 U.S. at 664.

## V. DISCUSSION

A. <u>The United States' and ASMG Defendants' Motions to Dismiss Plaintiffs Mr. Iheanachor and Ms. Salazar's Claims for NIED.</u>

The Court will first address the United States' and ASMG Defendants' motions to dismiss Plaintiffs Mr. Iheanachor and Ms. Salazar's NIED claims. California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). Whether a duty existed is a question of law. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). Under the theory of negligent infliction of emotional distress, there are two variations—bystander and direct victim.[1] *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1037–38 (1998). This matter presents a bystander case as neither Mr. Iheanachor nor Ms. Salazar were physically impacted or injured. Instead, Mr. Iheanachor and Ms. Salazar allege they witnessed Ms. Mota's injury at the hands of Defendants.

In the absence of physical injury or impact to Mr. Iheanachor or Ms. Salazar, damages for emotional distress in a bystander case is recoverable only if Mr. Iheanachor or Ms. Salazar:

> (1) is closely related to the injury victim, (2) are present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim, and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.

*Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989). At issue here are the first and second prongs.

---

[1] Bystander cases refer to plaintiffs "not physically impacted or injured, but instead witnessed someone else being injured to due defendant's negligence." *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1037 (1998). Direct victim cases refer to cases in which "the plaintiff's claim of emotional distress is . . . based upon the violation of a duty owed directly to the plaintiff." *Id.* at 1038.

1. Plaintiff Mr. Iheanachor's Claim for NIED.

As to Mr. Iheanachor's NIED claim, the United States and ASMG Defendants both dispute the first element necessary for a NIED claim, arguing Mr. Iheanachor is not closely related to the injured victim, Ms. Mota. (Doc. Nos. 3, 20).

California law bars a bystander's recovery for NIED if the bystander is not closely related to an injured victim. *See Thing*, 48 Cal. 3d at 667 ("The class of potential plaintiffs should be limited to those who because of their relationship suffer the greatest emotional distress."). Only relatives living in the same household, "or parents, siblings, children, and grandparents of the victim" should be allowed to recover for NIED. *Id*. at 668 n.10. The California Supreme Court has held unmarried cohabitants may not recover damages for emotional distress. *Elden v. Sheldon*, 46 Cal. 3d 267, 277 (1988).

Here, Mr. Iheanachor is not closely related to Ms. Mota under controlling California authority. At all times relevant, Mr. Iheanachor was Ms. Mota's fiancé and life partner. (Doc. No. 1 ¶ 44.) Although the Court does not doubt the close relationship between Mr. Iheanachor and Ms. Mota, the Court is bound by California's controlling bright-line rule in rendering this decision. However, Mr. Iheanachor alleges he was fearful for injury not only to his fiancé but also his unborn child. (*Id.*) Under California law, children qualify as close relatives. *See Thing*, at 668 n.10. While it is possible Mr. Iheanachor feared for the safety of his unborn child, missing from the FAC are any allegations that Defendants directly caused harm to Mr. Iheanachor's child during labor and delivery. Further, the child is not a party to the action, and no plausible harm or injury is implied through the allegations in Plaintiffs' FAC.

Thus, the first element to recover on an NIED claim is not satisfied as it pertains to Mr. Iheanachor because he was not at any time relevant related to the injured victim for the underlying medical malpractice claim. Because Mr. Iheanachor fails the first prong to a NIED claim as a matter of law, his claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

//

7

19-CV-1212-AJB-NLS

### 2. Plaintiff Ms. Salazar's NIED Claim.

As to Plaintiff Ms. Salazar's NIED claim, the parties do not dispute that Ms. Salazar is closely related to Plaintiff Ms. Mota as her sister. However, the parties dispute the second prong of the NIED test. The second prong requires plaintiff to be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim." *Thing*, 48 Cal. 3d at 647. An essential component of recovery is an understanding perception of the injury-producing event. *Golstein v. Superior Ct.*, 223 Cal. App. 3d 1415, 1427 (1990) (plaintiffs did not have a "contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury" when they saw child's injuries after overdose of radiation).

Here, all parties rely on *Bird v. Saenz* to illustrate that there was either an awareness of the injury-causing event or a lack thereof. In *Bird*, the California Supreme Court discussed the extent of a layperson's ability to recover for NIED in medical malpractice suits:

> In other NIED cases decided after *Thing*, and based on alleged medical negligence, courts have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event. This is not to say that a layperson can never perceive medical negligence, or that one who does not perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury-causing effect, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally.

28 Cal. 4th 910, 917–18 (2002); *compare Morton v. Thousand Oaks Surgical Hospital*, 187 Cal. App. 4th 926, 934–35 (2010) (plaintiffs who alleged to have medical expertise precluded from recovery because they insufficiently alleged expertise that allowed them to know and appreciate the medical treatment given to their mother was inadequate), *with Keys v. Alta Bates Summit Medical Center*, 235 Cal. App. 4th 484, 490–91 (2015) (plaintiffs allowed to recover when they witnessed victim's respiratory distress and aware that medical center's conduct caused defendant's death).

The court in *Bird* held that the plaintiff daughters were unable to succeed on a claim of NIED when they were present at the scene of the injury-causing event. *Id*. at 921–22. The court reasoned the plaintiffs were unable to perceive the defendants' failure to diagnose and treat a damaged artery in a meaningful way because such circumstance was beyond the awareness of a lay bystander. *Id*. at 917. According to the court, "a rule permitting bystanders to sue for NIED on account of unperceived medical errors hidden in the course of treatment cannot be reconciled with *Thing*'s requirement that the plaintiff be aware of the connection between the injury-producing event and the injury." *Id*. at 921.

Defendants argue that Plaintiff Ms. Salazar was not in the operating room, and therefore could not have known the cause of the sounds she heard. (Doc. No. 3 at 7:5-10); *see Ra v. Superior Ct.*, 154 Cal. App. 4th 142, 149 (2007) ("[A]lthough [presence may be established] through nonvisual sensory perception, 'someone who hears an accident but does not then know that it is causing injury to a relative does not have a viable bystander claim . . . even if the missing knowledge is acquired moments later.'").

Here, Plaintiff Ms. Salazar alleges that she was a percipient witnesses to the injury-producing event, Ms. Mota's emergency C-section. (Doc. No. 1 ¶ 45.) She stayed right outside the operating room, and could hear Ms. Mota "screaming for help, and for Defendants to stop cutting and hurting her." (*Id.*) Ms. Salazar further argues that she "had contemporaneous knowledge of the injury producing event, i.e. [Ms. Mota] being cut into without the benefit of sufficient anesthesia, as well as the resulting injuries to said Plaintiff through their sense of hearing." (Doc. No. 11 at 16:6-10; 23 at 11:17-21.)

The instant case draws many comparisons to *Bird*. Ms. Salazar heard pages for ASMG Defendants over the hospital's system. (Doc. No. 1 ¶ 42.) Additionally, Ms. Salazar was present when medical personnel rushed Ms. Mota to the operating room. (*Id.*) Ms. Salazar also had a nonvisual sensory perception of chaos in the operating room. (*Id.* ¶ 46.) While it is plausible Ms. Salazar heard commotion in the operating room, the facts do not sufficiently allege Ms. Salazar appreciated the harm caused to the point of contemporaneous awareness. *Hurlbut v. Sonora Cmty. Hosp.*, 207 Cal. App. 3d 388, 397

(1989) ("[T]here is an element of 'certainty of injurious impact' necessary to establish the requisite sensory perception of the injury-producing event."). Ms. Salazar merely perceived endangerment and chaos, not harm. But "[p]erception of endangerment, while potentially stressful, is insufficient to cause legally cognizable harm[.]" *Hurlbut*, 207 Cal. App. 3d at 397. Ms. Salazar is a layperson, and the facts alleged in Plaintiffs' FAC are not sufficient to demonstrate an extreme example like the court in *Bird* suggested. *See Bird*, 28 Cal. 4th at 918. Specifically, Ms. Salazar was not contemporaneously aware that Ms. Mota "was being cut into without the benefit of sufficient anesthesia." (Doc. No. 11 at 16:8-9; 23 at 11:19-20.) Therefore, Ms. Salazar has not pleaded a legally sufficient claim for NIED.

To conclude, Mr. Iheanachor's NIED claim fails because as a matter of law, he is not closely-related to Ms. Mota. Thus, Mr. Iheanachor's NIED claim is **DISMISSED WITHOUT LEAVE TO AMEND**. Additionally, Ms. Salazar's claim is **DISMISSED WITH LEAVE TO AMEND** because she has failed to plead facts demonstrating she was contemporaneously aware that the injury-producing event caused harm.

B. <u>Plaintiff Ms. Mota fails to state a claim for medical battery against AMSG Defendants.</u>

ASMG Defendants also seek to dismiss Ms. Mota's medical battery claim for failure to state a claim. "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented." *Cobbs v. Grant*, 8 Cal. 3d. 229, 240 (1972). If a physician received consent for one treatment or procedure, and performs another, a battery occurs. *Piedra v. Dugan*, 123 Cal. App. 1483, 1495 (2004). Consent is not required where an emergency arises. *Id*.

Plaintiff Ms. Mota, and ASMG Defendants dispute the appropriate elements that should be used for medical battery. Ms. Mota asserts that CACI No. 530B is most applicable. (Doc. No. 11 at 10:8-12.) On the other hand, ASMG Defendants assert CACI No. 530A is applicable. (Doc. No. 3 at 8:6-11.) As it pertains to ASMG Defendants, CACI No. 530A is the proper standard. The Directions for Use for CACI No. 530B indicate CACI No. 530A is most appropriate: "If the claim is that defendant proceeded without

consent or deviated from the consent given, give CACI No. 530A." 1 CACI 530B (2019). Under this standard, to establish a claim for medical battery a plaintiff must prove all of the following: (1) the defendant performed a medical procedure without consent, or the plaintiff consented to one medical procedure, but performed a substantially different one; (2) the plaintiff was harmed; and (3) the defendant's conduct was a substantial factor in causing plaintiff's harm. 1 CACI 530A (2019).

At the heart of this issue is whether ASMG Defendants either performed a medical procedure without consent, or whether ASMG Defendants performed a procedure that was substantially different than the one that was consented to.[2] ASMG Defendants argue that the medical battery claim has no merit because ASMG Defendants—as the anesthesiologists—did not perform the alleged incision/C-section on Ms. Mota. (Doc. No. 3 at 8:15-18.) ASMG Defendants further argue that even if they had performed the incision/C-Section the emergency exception applies to the lack of consent. (Doc. No. 3 at 11:19-21.) Ms. Mota, however, argues that ASMG Defendants' "failures in this case were acts of omission rather than acts of commission." (Doc. No. 11 at 9:16.) Further, Ms. Mota undisputedly admits ASMG Defendants were not present in the room when the incision was made. (*Id*. at 10:16-17.) Ms. Mota asserts that if ASMG Defendants showed up and properly anesthetized her, no battery would have occurred. (*Id*. at 10:20-21.) Ms. Mota's argument, however, is unavailing.

Performance is essential to establish a medical battery claim. *See Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (2008) ("[A] battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent."). It is without question that ASMG Defendants did not perform the medical procedure that the medical battery claim relies on. Further, Ms. Mota does not present any case law to support whether an act of omission—here, failure to properly anesthetize—could give rise to a medical battery claim.

---

[2] Plaintiffs allege Ms. Mota consented to a vaginal delivery and the use of anesthesia. Ms. Mota also alleges she never consented to undergo a C-Section. Further, if she impliedly consented, such consent contained the implied condition of sufficient anesthesia. (Doc. No. 1 ¶ 52.)

11

Thus, construing the facts most favorable to Plaintiff, Ms. Mota cannot prove a medical battery claim against ASMG Defendants. ASMG Defendants simply did not perform the C-section or execute the incision.

Because, as a matter of law, ASMG Defendants did not perform a procedure required for medical battery, the emergency exception is irrelevant and the Court declines to address this argument. Therefore, Plaintiff Ms. Mota's medical battery claim against AMSG Defendants is **DISMISSED WITHOUT LEAVE TO AMEND**.

## VI. CONCLUSION

In sum, Mr. Iheanachor was not, at any time relevant, closely related to the injured victim, Ms. Mota. As such, his claim for NIED is **DISMISSED WITHOUT LEAVE TO AMEND**. Additionally, Ms. Salazar was not present at the injury-producing event and aware that it caused harm to the injured victim. Although Ms. Salazar was present through hearing the chaos in the operating room, she was not contemporaneously aware, nor appreciated, that there was insufficient anesthesia. Therefore, her NIED claim is **DISMISSED WITH LEAVE TO AMEND**. Further, the Court **GRANTS** ASMG Defendants' motion to dismiss Ms. Mota's medical battery claim. Because it is undisputed ASMG Defendants did not perform the C-Section nor the incision and were not present in the room at the time in question, Ms. Mota's medical battery claim against ASMG Defendants is **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiffs will have **twenty-one (21) days** from the date of this Order to file their amended complaint. Failure to file an amended complaint consistent with this Order will result in dismissal of this case.

**IT IS SO ORDERED**.

Dated: March 16, 2020

Hon. Anthony J. Battaglia
United States District Judge