Norman M. Finkelstein, Esq. CSB 108305
LAW OFFICES OF NORMAN M. FINKELSTEIN, A.P.C.
110 Juniper Street
San Diego, California 92101
Telephone: (619) 232-1815
Facsimile: (619) 232-1884

Attorneys for: Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELFINA MOTA, | CASE NO.: 19-cv-1212 - W (MSB) (Related to Case No. 18-cv-2775-AJB-NLS) |
| Plaintiff, | |
| v. | PLAINTIFFS TRIAL BRIEF |
| UNITED STATES OF AMERICA, | DATE: October 25, 2022<br>TIME: 9:00 A.M.<br>DEPT: 4A<br>JUDGE: Honorable A. Battaglia |
| Defendant. | |

Plaintiff, DELFINA MOTA, respectfully submits the following Trial Brief:

**I.   NATURE OF THE CASE:**

This case involves California state law causes of action for Medical Malpractice and Medical Battery asserted by Plaintiff, DELFINA MOTA, arising out of the performance of a cesarian section surgery, by SANDRA LOPEZ, M.D., an employee of the federally funded community health center, VISTA COMMUNITY CLINIC, without the benefit of sufficient anesthesia.

**II.   PROCEDURAL HISTORY:**

The original action was filed in the Superior Court, for the State of California and was removed to this Court by Defendant, UNITED STATES OF AMERICA (substituting in place of Defendants, SANDRA LOPEZ, M.D., and VISTA COMMUNITY CLINIC.)

The only remaining parties are Plaintiff, DELFINA MOTA, and Defendant, UNITED STATES OF AMERICA, all others having been previously dismissed.

### III. FACTS:

On or about November 15, 2017, at approximately 11:51 A.M. Plaintiff, DELPHINA MOTA, a 25 year old who at the time was, 41 weeks and 4 days pregnant, with gestational diabetes, presented to TRI CITY MEDICAL CENTER for the inducement of labor. At admission, Plaintiff, was awake and alert X 2, with no apparent distress. The fetal weight was estimated at 7 pounds and the fetal heart tracing was reactive. She was initially 2 cm dilated. She was attended by SANDRA LOPEZ, M.D., an Obgyn assigned to her case, consultation was done and a discussion of the options were agreed to.

At the request of Plaintiff, an epidural was administered by DAVID SEIF, M.D., (the anesthesiologist) at approximately 11:06 P.M., on 11/15/17, in order to eliminate pain during the labor process.

At approximately 11:20 P.M., Pitocin was started in order to induce contractions, however during the course of labor she had an intolerance to Pitocin augmentation. At approximately 12:39 A.M. on 11/16/17 her blood pressure dropped and the Pitocin was temporarily discontinued.

Sometime before 05:21 A.M. the following morning, some 6 hours after the administration of the epidural, the fetal heart rate became unable to read. At that time, Dr. Lopez was made aware and at 05:24 A.M. she called for an emergency C-Section.

Despite numerous pages to respond immediately to the operating room, the Anesthesiologist, DAVID SEIF, M.D. did not appear.

The epidural that had been previously administered to Plaintiff, DELFINA MOTA, initially had the intended effect of numbing her from her waist down, however by the time she was rushed into the operating room at 05:24 A.M., its effectiveness had considerably abated.

To this point in time it is debated whether or not SANDRA LOPEZ, M.D. consulted with Plaintiff, DELFINA MOTA, for her consent to undergo a C-Section delivery rather than a vaginal one before leaving the labor and delivery room.

Plaintiffs expert, board certified in obstetrics/gynecology as well as Maternal-Fetal Medicine, Barry Schifrin, M.D., will be testifying in this case. Dr. Schifrin will present his opinion that **during the course of Ms. MOTA'S labor**, SANDRA LOPEZ, M.D., fell below the community standards of care by 1) failing to properly control the Pitocin infusion, 2) failing to properly detect and respond to excessive uterine activity, 3) failing to appreciate the impact of maternal hypotension on the fetus (especially when combined with excessive uterine activity.)

Upon arrival in the Operating Room, Plaintiff, DELFINA MOTA was transferred to the operating room table by several nurses and her four extremities were strapped down, against her will. During this process, SANDRA LOPEZ, M.D., had been scrubbing and donning her gown and mask required for the surgery.

Once DR. LOPEZ entered the operating room and learned that the anesthesiologist had not responded to the page, she lost her sense of professionalism and control, such that she began pounding on a table and yelling for Lidocaine (a local anesthetic), all of this, while Plaintiff, DELFINA MOTA was lying on the operating room table, trembling with fear for what was about to happen to her. At the same time MS. MOTA **vociferously insisted that the surgery not be commenced without the benefit of adequate anesthesia**.

In the Operating Room, SANDRA LOPEZ, M.D., unilaterally made the decision to perform the "C-Section" lacking adequate anesthesia, without first consulting her patient, DELFINA MOTA, and obtaining informed consent.

Dr. Schifrin will present his further opinion that once in the Operating Room, SANDRA LOPEZ, M.D., yet again fell below the community standards of care by creating a chaotic atmosphere while her patient lie strapped to the operating table, unreasonably causing Ms. Mota to be more frightened by the events that were occurring around her.

In addition, Dr. Schifrin will present his further opinion that while in the Operating Room, SANDRA LOPEZ, M.D., fell below the community standards of care by failing to

obtain Plaintiff, MOTA'S informed consent to undergo the emergency C-Section without the benefit of adequate anesthesia, due to the missing anesthesiologist.

Despite the emergency situation caused by SANDRA LOPEZ, M.D.'S negligence, Plaintiff, DELFINA MOTA, **remained fully conscious and alert at all times prior to the commencement of the surgery.** In fact not only did Plaintiff, DELFINA MOTA not provide any actual or implied consent for the surgery, without adequate anesthesia, she **adamantly voiced her strong opposition to the performance of said surgery without the administration of adequate anesthesia!**

Suddenly, and without any further warning, SANDRA LOPEZ, M.D. proceeded to perform the C-Section by making the first incision with her scalpel into DELFINA MOTA'S abdomen. This despite the strong vociferous objections by Plaintiff, DELFINA MOTA. The C-Section was performed by SANDRA LOPEZ, M.D., with inadequate anesthesia given! Not only was this action below the community standards of care, but it also constituted a battery, upon Plaintiff.

The following is an excerpt from SANDRA LOPEZ, M.D's Operative Report:

"Due to the fact that the anesthesiologist was not in the operating room I proceeded to cutting a Pfannenstiel skin incision with a knife through the skin down to the layer of the fascia. The fascia was nicked in the midline and scored and dissected off bluntly. The rectus muscles were separated in the midline and the peritoneum was entered bluntly and stretched. **Dr. Seif then entered the room when the lower uterine segment was incised with a knife**. The incision was extended with an anterior posterior pull and the membranes were ruptured. The vertex was delivered with manual assistance. . ."

Taking it upon herself, DR. LOPEZ decided, **without even asking her patient** who was fully awake and aware, if she consented to undergo the C-Section without the benefit of sufficient anesthesia. Had DR. LOPEZ done so, Plaintiff would have expressed her desire to wait for an anesthesiologist to respond. This fact is evidenced by Plaintiff's repeated calls for Defendant not to cut her and to stop, once the first incision was begun. Thus the C-Section was commenced over and above Plaintiffs objections and pleas for Defendant to stop.

During the part of the surgery, prior to the arrival of DAVID SEIF, M.D., Plaintiff,

DELFINA MOTA was crying, trembling and screaming at the top of her lungs, that she could feel everything that was happening, and was also pleading for help, and for Defendant to stop cutting and hurting her, all to no avail.  This was evidenced by not only the observations of MR. IHEANACHOR and MS. SALAZAR, who were both in the hallway outside the Operating Room, but also by ASHLEY WOODS, a respiratory therapist, then employed by TRI-CITY HOSPITAL, who was actually present in the Operating Room during said C-Section.

Eventually at some point after the surgery commenced, Defendant, DAVID SEIF, M.D., showed up in the operating room, and although it was too late to prevent the incredible pain and suffering sustained by Plaintiff, DELFINA MOTA, he immediately administered Propofal (a general anesthetic) which rendered DELFINA MOTA unconscious.

### IV.     THEORIES OF LIABILITY:

#### A.     Medical Negligence:

Plaintiff contends that SANDRA LOPEZ, M.D., fell below the community standards of care by 1) failing to properly control the Pitocin infusion, 2) failing to properly detect and respond to excessive uterine activity, 3) failing to appreciate the impact of maternal hypotension on the fetus (especially when combined with excessive uterine activity.) 4) once in the Operating Room, SANDRA LOPEZ, M.D., fell below the community standards of care by creating a chaotic atmosphere therein, while the patient lie strapped down and trembling, unreasonably causing MS. MOTA to be more frightened by the events that were occurring around her.  5) Last but certainly not least, while in the Operating Room, SANDRA LOPEZ, M.D., fell below the community standards of care by failing to obtain Plaintiff, MOTA'S informed consent to undergo the emergency C-Section without the benefit of adequate anesthesia, due to the missing anesthesiologist.

#### B.     Battery:

"The common law has long recognized this principle: **A physician who performs**

**any medical procedure without the patient's consent commits a battery irrespective of the skill or care used**. (Estrada v. Orwitz (1946) 75 Cal.App.2d 54, 57 [170 P.2d 43]; Valdez v. Percy (1939) 35 Cal.App.2d 485, 491 [96 P.2d 142]; Schloendorff v. Society of New York Hospital, supra, 211 N.Y. 125 [105 N.E. at p. 93]; see Union Pacific Railway Co. v. Botsford, supra, 141 U.S. at p. 252 [35 L.Ed.2d at pp. 737-738]; Mohr v. Williams (1905) 95 Minn. 261 [104 N.W. 12, 14- 15], overruled on other grounds in Genzel v. Halvorson (1957) 95 Minn. 261 [80 N.W.2d 854, 859]; Prosser on Torts (4th ed. 1971) § 18, pp. 104-106; Rest.2d Torts, § 49.) As a corollary, the law has evolved the doctrine of informed consent. (See Cobbs v. Grant, supra, 8 Cal.3d at pp. 239-241.) "Under this doctrine, 'the patient must have the capacity to reason and make judgments, the decision must be made voluntarily and without coercion, and the patient must have a clear understanding of the risks and benefits of the proposed treatment alternatives or non-treatment, along with a full understanding of the nature of the disease and the prognosis.' [Citations.]" (Rasmussen v. Fleming, supra, 154 Ariz. 207 [741 P.2d at p. 683].)" *Thor v. Superior Court* (1993) 5 Cal.4th 725, 735, emphasis added.

At P. 735 -736 of *Thor, supra,* the California Supreme Court goes on to state the following:

> "While the physician has the professional and ethical responsibility to provide the medical evaluation upon which informed consent is predicated, **the patient still retains the sole prerogative to make the subjective treatment decision based upon an understanding of the circumstances**. (In re Gardner, supra, 534 A.2d at p. 951; In the Matter of Conroy (1985) 98 N.J. 321 [486 A.2d 1209, 1222, 48 A.L.R.4th 1].) **Accordingly, the right to refuse medical treatment is equally "basic and fundamental" and integral to the concept of informed consent.**" *Thor v. Superior Court* (1993) 5 Cal.4th 725, 735 - 736, emphasis added.

Lastly, at P. 736, the California Supreme Court in *Thor, supra,* held the following:

> "Because health care decisions intrinsically concern one's subjective sense of well-being, this right of personal autonomy does not turn on the wisdom, i.e., medical rationality, of the individual's choice. (Lane v. Candura (1978) 6 Mass.App. 377 [376 N.E.2d 1232, 1236, 93 A.L.R.3d 59]; In re Gardner, supra, 534 A.2d at p. 951; see also Bouvia, supra, 179 Cal.App.3d at p. 1143.) "Anglo-American law starts with the premise of thorough-going self determination. It follows that each man is considered to be master of his

own body, and he may, if he be of sound mind, expressly prohibit the performance of life-saving surgery, or other medical treatment. **A doctor might well believe that an operation or form of treatment is desirable or necessary, but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception."** *Thor v. Superior Court, supra,* at P. 736. Emphasis added.

Defendant may argue that the existence of an emergency, whereby DR. LOPEZ reasonably believed that the medical procedure was necessary to be undertaken immediately **and there was insufficient time to fully inform the patient**, would serve to act as a defense to a claim of Medical Battery. However, that is not what happened in the instant case. Even after the "emergency" was declared by DR. LOPEZ, and the C-Section was ordered, **there was ample time (while both DR. LOPEZ and MS. MOTA were present in the Operating Room), to ask the patient for consent, prior to commencement of the surgery**, since she was fully conscious and aware, whether or not she consented to proceed without the benefit of anesthesia. **But this was never done**, despite MS. MOTA'S consistent cries and pleas **not to go forward with the surgery without the benefit of adequate anesthesia**.

Unlike MS. MOTA, herein, in the case of *Preston v. Hubbell* (1948) 87 Cal.App.2d 53, 57, the Court at P.57 states:

> "The next point is that the fracture was repaired without plaintiff's express consent. When defendant was employed to extract the tooth there was no discussion of other services that might be required and, **SINCE PLAINTIFF WAS UNCONSCIOUS** while the jaw was being repaired, she did not give express consent to that operation." (*Id.* at p.57, emphasis added.)

In the case before us, DELFINA MOTA was not only awake, and capable of giving consent, she adamantly refused to do so, as evident by her screams and pleas for the Defendant to **STOP CUTTING INTO HER** and that she could feel everything that was being done to her, thereby negating any prior implied consent. Regardless DELFINA MOTA, clearly made her wishes known to all within earshot that **SHE DID NOT WANT TO PROCEED WITH THE C-SECTION, LACKING ADEQUATE ANESTHESIA.**

Plaintiff does not contend that DR. LOPEZ had any ill intentions towards her, when she commenced the surgery, rather that DR. LOPEZ merely took it upon herself to do what **she** thought was best, despite the vociferous objections of MS. MOTA, i.e. substituted her own judgment for that of her patient, which is totally contrary to the California Supreme Court decision in *Thor v. Superior Court, supra,* at P. 736.

V.  **DAMAGES**:

Plaintiffs expert Dominick Addario, M.D., board certified in Psychology and Neurology and a Distinguished Life Fellow in the American Psychiatric Association, has performed a psychiatric evaluation of MS. MOTA, in addition to reviewing all of the pertinent records and depositions taken in this case. She tested positive for Post Traumatic Stress Disorder (PTSD) on the Keane Scale at 80 and the Schlenger Scale at 75.

Dr. Addario's diagnostic impressions include: PTSD as a consequence of this injury; major depressive disorder as a consequence of her medical condition and trauma; specific phobia as a consequence of this injury, involving anxiety for any future surgeries or pregnancies; and otherwise.

As a direct and legal result of the above described conduct, Plaintiff, DELFINA MOTA, underwent excruciating and unnecessary pain and suffering, until she eventually passed out from the pain, when she felt her abdominal muscles forcibly being ripped apart. In addition, she suffers from PTSD, continues to undergo significant emotional distress from the above described conduct, such as flashbacks, nightmares, phantom pain at the incision site, and otherwise, and will likely do so for the remainder of her life.

From the moment the surgery commenced, MS. MOTA felt her abdomen being cut into and she was screaming at the top of her lungs for Defendant to stop, since she could feel everything that was being done to her body. It is Plaintiffs contention, that beginning with the very first incision into her abdomen performed by DR. LOPEZ, until her child was in fact delivered, constituted a continuing act of battery, by Dr. Lopez.

Since the subject incident, despite the fact that both her and her partner desire

having more children, MS. MOTA, learned that she was again pregnant. Rather than subject herself to another c-section, she opted to undergo an abortion, so she would not have to face a similar horrific occurrence. That fact is very telling as to the impact of these events on her psyche.

### VI. MICRA LIMITATION INAPPLICABLE FOR BATTERY CLAIM:

In the case of *Burchell v. Faculty Physicians & Surgeons of the Loma Linda Univ. Sch. of Med.*, (2020) 54 Cal.App.5th 515, 523-524, the Court held the following:

> "Although MICRA expressly applies to actions based on professional negligence, our Supreme Court has "not limited application of MICRA provisions to causes of action that are based solely on a 'negligent act or omission' ...." ( Central Pathology Service Medical Clinic, Inc. v. Superior Court (1992) 3 Cal.4th 181, 192, 10 Cal.Rptr.2d 208, 832 P.2d 924.) "**[A]dditional causes of action frequently arise out of the same facts as a medical malpractice cause of action," including battery**. ( Smith v. Ben Bennett, Inc. (2005) 133 Cal.App.4th 1507 1514, 35 Cal.Rptr.3d 612.) *Burchell, supra* at P. 523

The *Burchell* Court goes on as follows:

> "Our Supreme Court has distinguished between "two qualitatively different types" of medical battery. ( Larson, supra , 230 Cal.App.4th at p. 349, 179 Cal.Rptr.3d 161"
>
> P.524
>
> "[discussing Cobbs v. Grant (1972) 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 ( Cobbs ) ].) The first, an intentional tort, "occurs when a physician obtains the patient's consent to perform one type of treatment, but performs a substantially different treatment for which the plaintiff gave no consent." ( Larson , at p. 349, 179 Cal.Rptr.3d 161.) MICRA's limitation on non-economic damages does not apply to such claims. (E.g., Perry v. Shaw (2001) 88 Cal.App.4th 658, 663-664, 668 & fn.4, 106 Cal.Rptr.2d 70.)"
>
> "The second type "occurs when a physician performs the treatment for which consent was obtained and an infrequent complication occurs that the physician failed to disclose when obtaining the patient's consent." (Larson, supra , 230 Cal.App.4th at p. 349, 179 Cal.Rptr.3d 161.) "In that circumstance, the claim is **based on professional negligence, not intentional misconduct, because the physician did not deliberately deviate from the consent**, but merely failed to disclose all known potential complications." ( Ibid. ) MICRA's limitation on non-economic damages applies to this sort of battery, which amounts to a claim that the doctor "failed to meet the applicable standard of care in rendering his services." ( Id. at p. 352, 179 Cal.Rptr.3d 161.)"

In the case at bar, DR. LOPEZ' decision to proceed with the C-Section without adequate anesthesia, lacking MS. MOTA'S consent, was much more than dealing with a mere unforseen complication, rather a deliberate decision on the part of DR. LOPEZ to

substitute her decision making in place of that of her patient. Performing surgery without sufficient anesthesia clearly constitutes a deliberate deviation from any consent that may have occurred before leaving the labor and delivery room.

### VII. CONCLUSION:

At the conclusion of this trial, Plaintiff will be seeking $250,000 in general damages, as compensation for the medical malpractice claim, (based on the MICRA limitation), as well as an additional $1,500,000 as compensation for the battery claim.

Dated: October 10, 2022

LAW OFFICES OF NORMAN M. FINKELSTEIN, A.P.C.

By: _____
Norman M. Finkelstein
Attorneys for Plaintiff

```
Norman M. Finkelstein, Esq. CSB 108305
LAW OFFICE OF NORMAN M. FINKELSTEIN, APC
110 Juniper Street
San Diego, California 92101
Tel: (619) 232-1815


Attorneys for Plaintiff
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELFINA MOTA<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; TRI-CITY HEALTHCARE DISTRICT dba TRI-CITY MEDICAL CENTER; DAVID SEIF, M.D.; ANESTHESIA SERVICES MEDICAL GROUP, INC.<br><br>          Defendants. | CASE NO 19-cv-01212-W-(MSB)<br>(Related to Case No. 18-cv-2775-ABJ-NLS)<br><br><br><br>**PROOF OF SERVICE**<br><br>"IMAGED FILE" |

    I, Norman M. Finkelstein, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; I am employed in the County of San Diego, California, to which county the within mentioned mailing occurred. My business address is 110 Juniper Street, San Diego, California 92101. I served the following document(s)

Plaintiffs Trial Brief

    \_    **U.S. MAIL:** By placing an original and/or a true and correct copy in a separate envelope for each addressee named herein, with the postage thereon fully prepaid, on

    \_    **OVERNIGHT EXPRESS MAIL**: By placing an original and/or a true and correct copy in a separate envelope for each addressee named herein, and caused to be sent through an express mail service (i.e., FedEx, UPS Next-Day Air,

Airborne, etc) as done in the normal course of business, for guaranteed overnight delivery on (DATE).

___ **PERSONAL DELIVERY:** (C.C.P. §415.10). By personally delivering an original and/or a true and correct copy on each addressee named herein on (DATE).

___ **BY FACSIMILE:** By personally sending to the addressee's telecopier number(s) a true copy of the above-described documents on (1/9/07) and thereafter obtaining written confirmation of successful transmission(s) on same date.

_X_ **BY ELECTRONIC MAIL** Via e-mail to the addresses shown below.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

EXECUTED ON: October 11, 2022 at San Diego, California.

_____
Norman M. Finkelstein

**Service List**

Attorney For United States Of America
Robert S. Brewer, Jr. Esq.
United States Attorney
Steven J. Poliakoff, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101    steve.poliakoff@usdoj.gov
(619) 546-7058